**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH HENDERSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIA KARDOSH | : | |
| | : | |
| | : | No. 2065 EDA 2025 |
| v. | : | |
| | : | |
| | : | |
| MARY ELLEN KARDOSH AND WILLIAM | : | |
| KARDOSH | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered July 3, 2025
In the Court of Common Pleas of Chester County
Civil Division at No: 2020-05201-CU

BEFORE:  STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:          **FILED AUGUST 7, 2026**

Appellants, Mary Ellen and William Kardosh ("Maternal Grandparents"), appeal from the final custody order entered on July 3, 2025, by the Court of Common Pleas of Chester County.[1]  Upon review, we vacate the July 3, 2025, order and remand for imposition of the February 28, 2025, order as a final order.

---

[*] Former Justice specially assigned to the Superior Court.

[1] This is one of four appeals taken from the July 3, 2025, order.  **See** 1874 EDA 2024 (Father's appeal), 2012 and 2013 EDA 2025 (Mother's appeals).

This case has a very lengthy and litigious history. On August 10, 2020, Joseph Henderson (Father) filed a petition for emergency relief and complaint for custody, wherein he sought custody of the parties two minor children, S.H. (DOB: 6/2016) and V.H. (DOB: 11/2018), due to the alleged substance abuse and mental instability of Julia Kardosh (Mother). Mother responded and averred that she left Father and moved to Maternal Grandparents' home to protect herself and the children from ongoing harm. Following a hearing on September 11, 2020, the trial court entered a temporary custody order awarding the parties shared legal custody. *See* Order, 9/14/20.[2] Mother was awarded primary physical custody and Father partial physical custody. *Id.* However, Father was not permitted to exercise his custodial periods at his residence until he completed a home assessment.[3] *Id.* Additionally, due to allegations of substance abuse and mental instability, the court ordered both parents to undergo a psychological screening by Bruce E. Mapes, Ph.D. to assess their mental fitness to safely parent the children.[4] *Id.*

On October 20, 2020, Maternal Grandparents filed a petition to intervene, citing 23 Pa.C.S.A. §§ 5324 (standing for any form of custody) and

_____

[2] Pursuant to the rules of procedure, the date of the orders referenced in this memorandum reflect the date in which the order was docketed. *See* Pa.R.A.P. 108(b).

[3] The home assessment was completed, and the report was filed on October 27, 2020.

[4] The psychological screenings were completed, and the reports were filed on November 5, 2020.

5325 (standing for partial or supervised custody).  Father objected and Mother consented to the intervention.  Following a hearing on December 10, 2020, the court granted Maternal Grandparents intervenor standing under Section 5325.  ***See*** N.T. Hearing, 12/10/20, at 19.  The court noted that "while I'm granting it under 5325, it doesn't mean that [Maternal Grandparents] might not have it under 5324 now or going forward."  ***Id.*** at 19.  After a conciliation conference on January 14, 2021, an interim order was entered awarding Mother, Father and Maternal Grandparents shared legal custody; Mother and Maternal Grandparents primary physical custody; and Father partial physical custody every other weekend and every Thursday.  ***See*** Custody Order, 1/27/21.

On June 28, 2021, the scheduled date for the custody hearing, the parties reached a custody agreement that kept the legal and physical custody provisions of the interim order and included a provision that the parties agreed to engage in family counseling with Kelly Hockenberry, Esquire, who was directed to prepare a report for the review hearing.[5]  ***See*** Custody Order, 6/28/21.  The order was entered as a final custody order that superseded all prior orders.  ***Id.*** at 6.  No appeal was taken.

Following a full-day review hearing, the court entered an order on October 1, 2021, which clarified and allocated periods of physical custody and parental responsibilities between Mother and Maternal Grandparents while

_____

[5] All parties were represented by counsel and signed the custodial agreement.

they resided in the same home. *See* Order, 10/1/21. All other aspects of the June 28, 2021, order remained in effect. *See id.* at 3. No appeal was taken.

On August 21, 2023, Mother filed a petition for emergency custody asserting that Maternal Grandparents took the children to New Jersey during Mother's custodial time, failed to provide an address of where they were staying and did not allow Mother to speak with the children. On August 29, 2023, Maternal Grandparents filed a petition to modify custody and an emergency petition for special relief and requested temporary suspension of the parents' custodial rights pending hair follicle testing.[6] They alleged that Mother and Father were increasingly hostile toward Maternal Grandparents and failed to abide by the terms of the custody order. They also alleged that they discovered what they believed were drugs and drug paraphernalia in Mother's bedroom and within reach of the children.

Following a conciliation conference on September 23, 2023, the conciliator recommended awarding Maternal Grandparents sole legal and physical custody of the children with Mother and Father having periods of supervised visitation. Because the change of custody was not agreed upon, Mother and Father filed their objections and requested a trial.

---

[6] Their petition to modify included notice to Mother and Father that they "have been sued in court to obtain custody of the child[ren.]" Notice and Order to Appear, 8/29/23. Revised petitions were filed on August 30, 2023, that included additional factual information, but did not change the requested relief. The revised petition to modify included the same notice to Mother and Father that they "have been sued in court to obtain custody of the child[ren.]" Notice and Order to Appear, 9/12/23.

Thereafter, Mother and Father filed a variety of motions and petitions challenging Maternal Grandparents' standing and involvement in the custody action. Several hearings addressing the parties' filings were held by at least three different judges until the Honorable Deborah S. Ryan was assigned to the case. There were also several petitions for protection from abuse ("PFA") filed by Mother against Father, Mother against Maternal Grandparents, Father against Maternal Grandparents[7], and Maternal Grandparents against Mother[8]. We highlight the major hearings and changes to custody.

On October 5, 2023, a hearing on the recommended change in custody and Maternal Grandparents' emergency petition was held before the Honorable Louis Mincarelli. Due to allegations made against Mother and Father, coupled with their behavior in the courtroom, Judge Mincarelli ordered Mother and Father to undergo immediate drug testing. The instant test indicated that Mother was positive for methamphetamines and Father was positive for amphetamines. Father indicated that he was prescribed Adderall, but did not provide the court with a copy of his prescription. Thereafter, the court entered an order awarding Maternal Grandparents sole legal and

_____

[7] On October 2, 2023, Father obtained a temporary PFA order which included the children as protected parties. As a result, the children were removed from Maternal Grandparents' home by police at 11:00 p.m.

[8] On October 6, 2023, Maternal Grandparents obtained a temporary PFA, and later a six-month final PFA, against Mother. The PFA evicted Mother from Maternal Grandparents home and she moved in with her paramour, John Canal, in New Jersey. It did not supersede the custody order except that Mother's visits would be supervised by Child and Adolescence Counseling Services of Southeastern Pennsylvania

physical custody of the children. *See* Order, 10/5/23. If Mother continued to reside with Maternal Grandparents, she was to be supervised on an agreed upon schedule. *Id.* If Mother moved out, then her visits would occur at Maternal Grandparents home every Sunday from 12:00 p.m. to 6:00 p.m. under their supervision. *Id.* Father was to be supervised by Child First Family Services every other Saturday from 12:00 p.m. to 3:00 p.m., or any other three-hour block of time available to the agency. *Id.* Mother and Father were both ordered to engage in and follow through with mental health and drug and alcohol treatment programs, and to provide documentation of such. *Id.*

On December 12, 2023, Mother filed a notice of proposed relocation to Mount Laurel, New Jersey. Maternal Grandparents filed a counter-affidavit objecting to the proposed relocation. The custody hearing was scheduled before the Honorable Analisa Sondergaard for June 2024, with a pretrial conference scheduled for April 2024.

Prior to then, a hearing on Mother's petition for special relief was held on April 8, 2024, before the Honorable Alita Rovito. Judge Rovito dismissed Mother's petition and entered an interim order which amended the October 5, 2023, order and the most recent PFA order only in the following manner: Child First Family Services would now supervise Mother's visits every Saturday for

four hours at a location designated by Child First.[9] **See** Order, 4/9/24. Father agreed to move his supervised visits to Sunday. **Id.**

On May 7, 2024, Judge Sondergaard granted Father's request for recusal; therefore, the custody hearing was rescheduled to November 2024 before Judge Ryan.

A hearing was held on August 9, 2024, which addressed: (1) Mother's emergency motion for contempt filed March 25, 2024; (2) Mother's motion to modify interlocutory order for alternative paid supervision service filed June 10, 2024, emergency motion to modify interlocutory order/request for change in supervision filed June 18, 2024, and petition for special relief filed July 16, 2024, all of which requested a change in the terms of the custody order; (3) Maternal Grandparents petition for counsel fees against Mother; and (4) John Canal's petition to intervene. The court took the matters under advisement at the end of the hearing.

On August 28, 2024, the court issued multiple orders. First, a temporary custody order wherein Mother was awarded four hours of supervised custody on Sundays if it occurred in New Jersey, and six hours if it was in Pennsylvania. The court also ordered (1) Mother to complete drug and alcohol and psychological evaluations with Dr. V. Richard Roeder; (2) the parties to

_____

[9] The order also stated that (1) the contempt issues would be addressed in the scheduled contempt hearing; (2) the PFA issues would be addressed in a hearing on Maternal Grandparents' request to extend the PFA; and (3) the custody issues would be addressed during the scheduled custody trial.

attempt to agree on a non-professional supervisor for Mother's time and provided recourse if no agreement was reached; and (3) an in-home visit and evaluation of John Canal's residence. The order further provided that if all conditions were met, it would approve John Canal as a non-professional supervisor and Mother would be able to exercise her custodial time in New Jersey.

Second, an award of partial counsel fees ($3,571.87) to be paid by Mother to Maternal Grandparents. Third, an order denying Mother's petition for contempt, but providing Mother five "make-up" visits with the children. Fourth, an order denying John Canal's petition to intervene.

On September 5, 2024, Mother filed an appeal from each order, as well as a request for reconsideration.[10] Said request was denied. Due to Mother's appeals to this Court, the custody trial was rescheduled to January 2025.

The in-home evaluation of John Canal's residence was submitted to the court on October 15, 2024. On October 21, 2024, after a colloquy, the court entered an amended interim order appointing John Canal as supervisor of Mother's custodial time with visits to occur every Sunday from 12:00 p.m. to 6:00 p.m. in a public setting in Pennsylvania. *See* Orders, 10/21/24 & 11/22/24. The order also directed Mother to comply with the previous order for drug and alcohol and psychological evaluations. *Id.*

_____

[10] Mother's appeals were ultimately quashed or dismissed. *See* 2486-2489 EDA 2024.

A six-day custody hearing was held from January 27, 2025, through February 3, 2025. Father and Maternal Grandparents were represented by counsel, and Mother was *pro se*. At the outset of the hearing, the court noted that it would not revisit the 2020 order granting Maternal Grandparents' standing. N.T. Custody Hearing, 1/27/25, at 6. However, it would assess whether they continued to have standing at that time. *Id.* The court then asked each party what relief they were requesting. Mother sought primary physical custody with Father having partial physical custody, and the Maternal Grandparents removed from the case. *Id.* at 10. Father likewise sought primary physical custody with Mother having partial physical custody, and the Maternal Grandparents removed. *Id.* at 22. Maternal Grandparents requested that sole legal and physical custody remain with them, subject to supervised visits with the parents. *Id.* at 27.

The court heard testimony from the following witnesses: Mother, Father, Maternal Grandmother, Maternal Grandfather, Brooker Berger (Mother's friend), Chris Pawlowski (probation officer), Kim Melhorn (owner of Child First), Angela Gornish (supervisor of Father's visits), Tracey Azzolini (Father's friend), John Canal, Dr. Blumenthal (medical review officer), and Carol Gamber (Paternal Grandmother).

On February 28, 2025, the court entered an interim custody order and order directing expert examination and report, as well as an extensive opinion analyzing both the custody and relocation factors. *See* Interim Order and Opinion, 2/28/25. The court awarded Maternal Grandparents with sole legal

and primary physical custody of the children. Father was required to complete a home evaluation prior to resuming supervised visits in his home. Mother was awarded supervised visitation every Sunday from 10:00 a.m. to 6:00 p.m. with John Canal as her supervisor. If Mother completed her court-ordered evaluations, the court would expand Mother's custodial time.[11] Additionally, the court explicitly denied Mother's request to relocate the children to New Jersey.

The order also prohibited the parties from filing frivolous, non-emergency petitions. Despite this prohibition, Mother and Father filed numerous pleadings titled "emergency" requesting the court to certify the February 28, 2025, interim custody order as an appealable interlocutory order. The requests were denied.[12] Mother also filed several "emergency" pleadings requesting funds to complete her court-ordered evaluations.

Mother was evaluated by Dr. Roeder on June 10, 2025, and a report was issued on June 19, 2025. A review hearing was held on June 23, 2025, the focus of which was the parties' compliance with the February 28, 2025, order. The order scheduling the review hearing did not set forth the parameters of the hearing or provide notice that the court would reconsider Mother's request

_____

[11] The order provided Mother with an opportunity to choose her own provider to complete the drug and alcohol and mental health evaluations. If, however, the provider was not approved by the court, then she was required to complete the evaluations with Dr. Roeder as originally ordered in August 2024.

[12] Despite the court's order denying her request for an interlocutory appeal, Mother filed four notices of appeal of the February 28, 2025, order, which were dismissed or quashed. *See* 886-889 EDA 2025.

to relocate. The court heard testimony from: Dr. Roeder, Mother, Father, and Maternal Grandmother.

On July 3, 2025, the court entered a final custody order and an extensive opinion analyzing both the custody and relocation factors. *See* Final Custody Order and Opinion, 7/3/25. The final order modified the interim order changing primary custody to Mother on a gradual basis. Mother and Maternal Grandparents would share legal custody until Mother assumed primary physical custody, then Mother would have sole legal custody. Mother's supervision requirements were removed, and the court imposed a schedule gradually increasing Mother's custodial time until she assumed primary physical custody on August 4, 2025. Once Mother assumed primary physical custody, Maternal Grandparents were awarded partial physical custody every other weekend. Father's supervised visits were dependent on his completion of a home evaluation, as well as the previously ordered mental health and drug and alcohol evaluations.[13] By changing primary custody to Mother, who resides in New Jersey, the court implicitly granted a relocation.

Maternal Grandparents filed a motion for reconsideration and stay of the order pending appeal, as well as a petition for special relief. The motions were denied. This timely appeal followed. Maternal Grandparents raise the following issues for our review:

---

[13] Between the six-day custody hearing and review hearing Father sold his home. As of June 2025, Father resided in Philadelphia with his brother and had not provided his address to Mother or Maternal Grandparents.

1. The trial court's order modifying all aspects of custody without notice is a violation of the parties' due process rights as no modification petition was pending and school change and relocation had already been denied.

2. It was an abuse of discretion and not in the best interest of the children to sua sponte grant a change of schools, as well as uproot all stability in their family and community lives.

3. The trial court abused its discretion when it ordered a change in legal and primary physical custody because the children (and mother) will lose their health insurance and social security benefits.

4. It is an abuse of discretion to rely on the stated preference of a six and nine year old child is not outweighed by their developmental stage, maturity levels and judgment.

5. The psychological assessment is not an accurate tool for determining safety for mother to parent, and does not address her psychiatric concerns.

Appellants' Brief, at 9.

Our analysis is focused on the first issue as it is dispositive of this appeal. We take no position on the remaining issues.

Maternal Grandparents argue that the July 3, 2025, order implicitly granting Mother's request to relocate was a violation of their due process rights because they were not provided notice that the issue of relocation would be addressed during the review hearing. "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." ***S.T. v. R.W.***, 192 A.3d 1155, 1160 (Pa. Super. 2018). It is well settled that "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance

to defend oneself before a fair and impartial tribunal having jurisdiction over the case." **S.T.**, 192 A.3d at 1161.

A parent seeking to relocate a child's residence must provide notice to "every other individual who has custody rights to the child." **See** 23 Pa.C.S.A. § 5337(c). If a party objects to the relocation, the court must hold a hearing and consider whether relocation is warranted after considering the statutory relocation factors, given "weighted consideration to those factors which affect the safety of the child." **Id.**, § 5337(g), (h).

Mother filed her notice of proposed relocation on December 12, 2023. Maternal Grandparents filed their objection. The issue of relocation was addressed during the six-day custody trial in early 2025. Mother presented evidence of where she lived, as well as the school district the children would attend if relocation to New Jersey was granted. After the close of trial, the court issued a comprehensive opinion addressing the relocation factors (as well as the custody factors) and an order denying Mother's request to relocate.

Within the order, the court included a provision to schedule a review hearing:

> A review hearing shall be scheduled in this matter by Family Court Administration no earlier than ninety (90) days following entry of this Interim Custody Order on the docket and in accordance with the court's availability. **The review hearing may include consideration by the court of an increase in Mother and Father's custodial time, subject to their compliance with and the results of the evaluations required herein**.

Interim Custody Order, 2/28/25, ¶ 12 (emphasis added). After the denial of Mother's request to relocate, she did not file another notice of proposed relocation. Moreover, the letter scheduling the review hearing did not provide notice that the court was going to reconsider its denial of Mother's request to relocate. It merely stated: "Please be advised the above-captioned matter has been scheduled for hearing on Monday, June 23, 2025 at 9:30 am in Courtroom 3 before the Honorable Deborah S. Ryan." Family Court Letter, 3/13/25. Thus, neither Mother nor the court provided Maternal Grandparents with notice that relocation would be considered during the review hearing, a violation of their due process rights.

Because the July 3, 2025, order provides Mother with primary physical custody, and Mother resides in New Jersey, the court implicitly granted Mother permission to relocate. Since there was no notice of proposed relocation pending, and the provision in the February 27, 2025, order regarding the review hearing did not mention that relocation was still at issue, we conclude that the court abused its discretion. As such, we vacate the July 3, 2025, order, and remand for imposition of the February 28, 2025, order as a final order.

July 3, 2025, custody order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/7/2026</u>